UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GABRIEL GILMORE,

                                        Plaintiff,

            v.                                                    9:20-CV-0542
                                                                  (MAD/DJS)

DAVID KARANDY, et al.,

                                        Defendants.
_____

APPEARANCES:

GABRIEL GILMORE
Plaintiff, Pro Se
04-B-0387
Attica Correctional Facility
Box 149
Attica, NY 14011


MAE A. D'AGOSTINO
United States District Judge

**DECISION AND ORDER**

**I.      INTRODUCTION**

        Plaintiff Gabriel Gilmore commenced this action by filing a pro se civil rights complaint

pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application for leave to

proceed in forma pauperis and a motion for appointment of counsel.  Dkt. No. 1 ("Compl.");

Dkt. No. 8 ("IFP Application");[1] Dkt. No. 4 ("Motion for Counsel").  By Decision and Order filed

_____

        [1]  By Order entered on May 15, 2020, plaintiff's initial application to proceed IFP was denied as
incomplete and the action was administratively closed.  Dkt. No. 5.  Thereafter, plaintiff filed his IFP Application
and the Clerk was directed to reopen this action and restore it to the Court's active docket.  *See* Dkt. Nos. 8, 9.

on June 17, 2020, plaintiff's IFP Application was granted, but following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), this Court found that it was subject to dismissal for failure to state a claim upon which relief may be granted. Dkt. No. 11 ("June 2020 Order").[2]  In light of his pro se status, plaintiff was afforded an opportunity to submit an amended complaint.  *Id*. at 11-13.

Presently before the Court is plaintiff's amended complaint.  Dkt. No. 14 ("Am. Compl.").[3]

## II.   SUFFICIENCY OF THE AMENDED COMPLAINT

### A.   The Complaint and June 2020 Order

In his original complaint, plaintiff alleged that defendant Dr. David Karandy and defendant Physicians Assistant Fisher Nesmith "forge[d]" "medical document[s]" indicating that he was taken to Albany Medical Center for evaluation and medical treatment on July 20, 2018, and defendant Nesmith "forge[d]" "medical document[s]" indicating that plaintiff was taken to Albany Medical Center for evaluation and medical treatment on July 9, 2019, in an effort to prevent plaintiff from receiving medical treatment.  Compl. at 7-9.

The complaint was construed to assert an Eighth Amendment medical indifference claim against the defendants.  *See* June 2020 Order at 6.

Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), plaintiff's Section 1983 claim against the defendants in their official capacities was dismissed with prejudice as barred by the Eleventh Amendment, and his

---

[2]  Based on the Court's decision preliminarily dismissing the complaint, the Court also denied plaintiff's Motion for Counsel as moot.  *See* June 2020 Order at 11-12.

[3]  Plaintiff has also attached documents to his amended complaint, *see* Dkt. No. 14-1, which the Court has considered as part of its sufficiency review herein.

Section 1983 claim against the defendants in their individual capacities was dismissed without prejudice for failure to state a claim upon which relief may be granted. *See* June 2020 Order at 6-11.

**B.      Review of the Amended Complaint**

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the June 2020 Order and it will not be restated in this Decision and Order. *See* June 2020 Order at 2-4.

Plaintiff's amended complaint once against asserts an Eighth Amendment medical indifference claim against defendants Karandy and Fisher based on their alleged forging of medical records. *See generally*, Am. Compl. Liberally construed, the amended complaint also asserts a First Amendment access-to-courts claim based on allegations that the forged medical records were used to dismiss a state court action, as well as First Amendment retaliation claims based on allegations that defendants created the forged medical records in response to plaintiff's state court action(s), and plaintiff was transferred to Attica Correctional Facility following his submission of a grievance regarding the allegedly forged medical records. *See id*. at 5, 13-15.[4]

For a more complete statement of plaintiff's claims, reference is made to the amended

---

[4] The amended complaint names Karandy and Fisher as defendants in their individual and official capacities. *See* Am. Compl. at 1.

complaint.[5]

### C.   Analysis

#### 1. Official Capacity Claims

The legal standard governing official capacity claims was discussed at length in the June 2020 Order, and will not be restated herein.  *See* June 2020 Order at 6-8.

As noted, the Court previously dismissed plaintiff's official capacity claims for monetary relief against defendants Karandy and Fisher with prejudice.  *See* June 2020 Order at 6-8.  Moreover, because these defendants are both alleged to be employed at Great Meadow Correctional Facility, where plaintiff is no longer incarcerated, *see* Am. Compl. at 2, plaintiff's request for injunctive relief related to his medical treatment at Attica Correctional Facility is not properly asserted against the named defendants.  *See Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *see also Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that

---

[5]  The amended complaint also alleges that defendants' wrongdoing gives rise to claims under 18 U.S.C. § 371, 18 U.S.C. § 1341, 18 U.S.C. § 3626, and 28 U.S.C. §§ 241 and 242.  Am. Compl. at 1, 7. Plaintiff's reference to 28 U.S.C. § 241 and 28 U.S.C. § 242 is in error because these statutes do not exist.  Insofar as plaintiff intended to refer to 18 U.S.C. § 241 and 18 U.S.C. § 242, these statutes, like 18 U.S.C. § 371 and 18 U.S.C. § 1341, are criminal statutes, which do not give rise to civil liability or authorize a private right of action. *See Storm-Eggink v. Gottfried*, 409 Fed. App'x 426, 427 (2d Cir. 2011) ("[T]here is no private right of action under [18 U.S.C.] § 242[.]"); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994) (affirming dismissal of plaintiff's claim  under 18 U.S.C. § 242 because this "criminal statute[s] . . . do[es] not provide private causes of action"); *Muhammad v. Smith*, No. 3:13-CV-760 (MAD/DEP), 2014 WL 3670609, at *7 (N.D.N.Y. July 23, 2014) ("18 U.S.C. § 241 is a criminal statute which does not create a private cause of action."); *Horn v. Brennen*, 840 F. Supp. 2d 576, 582 (E.D.N.Y. 2011) (criminal conspiracy under 18 U.S.C. § 371 does not provide for a private cause of action); *Wilcox v. First Interstate Bank*, 815 F.2d 522, 533 n.1 (9th Cir. 1987) (noting that there is no private right of action for mail fraud under 18 U.S.C. § 1341).  Moreover, 18 U.S.C. § 3626 addresses remedies available to prisoners with respect to federal civil actions regarding prison conditions, and therefore also does not give rise to an independent cause of action against the defendants in this case.

4

facility.").

Accordingly, and for the reasons set forth in the June 2020 Order, plaintiff's official

capacity claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b)

for failure to state a claim upon which relief may be granted.

### 2. Access-to-Courts Claim

In *Bounds v. Smith*, the Supreme Court held that access to the courts is a

fundamental right that requires prison authorities to "assist inmates in the preparation and

filing of meaningful legal papers by providing prisoners with adequate law libraries or

adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). The right

of access to the courts is also implicated when a prisoner experiences interference with his

mail. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

The "right of access to the courts" requires States "to give prisoners a reasonably

adequate opportunity to present claimed violations of fundamental constitutional rights."

*Bounds*, 430 U.S. at 828, *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350

(1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004).[6] "However, this right

is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a

showing of 'actual injury.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006)

(quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert

non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2)

---

[6] "[A] person's right of access to the courts has been found to arise not only under the First Amendment but under other parts of the Constitution, including the Due Process Clause of the Fourteenth Amendment." *Lasher v. Dagostino*, No. 9:16-CV-0198 (BKS), 2016 WL 1717205, at *4 (N.D.N.Y. Apr. 28, 2016) (collecting cases).

the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999). Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53 (noting that "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"). "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 415-16. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18 (footnote omitted).

"Finally, . . . the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Rather, the injury must be to an inmate's ability "to attack

[his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement." *Id*. at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*.

Here, plaintiff alleges that the New York State Attorney General's office "used" the "forged" medical records to "obtain a dismissal" of a state court action, which he appears to claim violated his First Amendment right to access the courts. *See* Am. Compl. at 13.

The amended complaint lacks any details regarding the state court action, and the Court has no basis to plausibly infer from the allegations in the amended complaint that the underlying claim(s) in the state court action were not frivolous. Moreover, plaintiff does not allege that he was precluded from arguing in the state court action that the medical records at issue in this case were forgeries.

Accordingly, plaintiff's First Amendment access-to-courts claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis*, 320 F.3d at 352 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech

or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).

Insofar as plaintiff has asserted a retaliation claim based on defendants' alleged forgery of medical records, as discussed more fully below, the Court has no basis to plausibly infer that defendants actually forged any of plaintiff's medical records. However, even if the Court were to blindly accept plaintiff's forgery allegations, the amended complaint contains only a conclusory allegation that the forgeries occurred in response to plaintiff's "State Court actions against DOCCS[.]" Am. Compl. at 15. The amended complaint lacks any non-conclusory allegations which plausibly suggest that defendant Karandy and/or defendant Nesmith were even aware that plaintiff filed one or more lawsuits before they allegedly "forged" plaintiff's medical records. *See Hayes v. Dahkle*, No. 9:16-CV-1368 (TJM/CFH), 2017 WL 384066, at *7 (N.D.N.Y. Jan. 27, 2017) (dismissing retaliation claim against corrections officer where plaintiff failed to allege that corrections officer was aware of the protected activity that gave rise to the claim); *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 208 (N.D.N.Y. 2015) (same). Moreover, based on the absence of allegations regarding what lawsuit(s) plaintiff filed against the New York State Department of Corrections and Community Supervision ("DOCCS") before the alleged forgeries, and when the lawsuits were filed and completed, the Court has no basis to plausibly that defendants Karandy and Nesmith forged medical records in response to any lawsuits filed by plaintiff. *See, e.g., O'Diah v. Mawhir*, No. 08-CV-322 (TJM/CFH), 2012 WL 4482579, at *7 (N.D.N.Y. Sept. 5, 2012) ("O'Diah fails to allege how grievances which he filed pertaining to his commissary account were discovered, or served as a motivating factor, in allegedly preventing him from

receiving medical care."), *report and recommendation adopted by* 2012 WL 4471183 (N.D.N.Y. Sept. 26, 2012); *DeLeon v. Wright*, No. 10-CV-863 (MAD/DRH), 2012 WL 3264932, at *7 (N.D.N.Y. July 5, 2012) ("DeLeon alleges no facts other than conclusory allegations to demonstrate that the filing of his grievances was a substantial factor in any defendants' alleged deliberate indifference. These conclusory allegations, without more, are insufficient to maintain the present claims."), *report and recommendation adopted by* 2012 WL 3264929 (N.D.N.Y. Aug. 9, 2012).

Insofar as plaintiff has asserted a retaliation claim based on plaintiff's transfer to a new correctional facility following his submission of a grievance regarding the allegedly forged medical records, the Court has no basis to plausibly infer from the allegations in the amended complaint either that the named defendants were personally involved in the decision to transfer plaintiff, or that the transfer was motivated by plaintiff's grievance submission.

Accordingly, plaintiff's First Amendment retaliation claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Medical Indifference Claim

The legal standard governing an Eighth Amendment medical indifference claim was discussed at length in the June 2020 Order, and will not be restated herein. *See* June 2020 Order at 8-9.

As noted, the amended complaint asserts an Eighth Amendment medical indifference claim against defendants Karandy and Nesmith based on allegations that these officials

"forged" medical records to indicate that plaintiff was treated at Albany Medical Center on July 20, 2018, and July 9, 2019, in an effort to prevent him from obtaining unidentified medical treatment.  *See generally*, Am. Compl.

As with the original complaint, the amended complaint does not allege that plaintiff was not evaluated by one or more medical professionals at Great Meadow Correctional Facility on the aforementioned dates, which is what the "forged" medical records actually appear to show.  *See* Dkt. No. 14-1 at 4-7.  For example, each allegedly "forged" record identifies "Pt Ns/Room" on the "Date of Exam" as "CF GRE[,]" which appears to be a reference to Great Meadow Correctional Facility, and not Albany Medical Center.  *Id*.  In addition, each record indicates that information was "reviewed" by a medical professional from Albany Medical Center on a date *after* plaintiff was physically examined, and one of the documents expressly states that "images" of an "exam" that occurred on July 9, 2019, were "submitted for interpretation" that same day, and "became available for interpretation" on July 18, 2019.  *Id*. at 6.  In other words, the medical records attached to the amended complaint do not show what plaintiff alleges they show, *i.e.*, that he was physically brought to Albany Medical Center for evaluation on July 20, 2018, and July 9, 2019.  Moreover, based on the absence of any allegation that plaintiff was not evaluated by one or more medical professionals at Great Meadow Correctional Facility on these dates, the Court has no basis to plausibly infer from the allegations in the amended complaint and documents attached thereto that defendants Karandy and Nesmith fraudulently created documents on Albany Medical Center letterhead, let alone did so out of deliberate indifference to plaintiff's serious medical needs.

Furthermore, although the Court expressly highlighted in the June 2020 Order that the original complaint was "devoid of any allegations identifying any specific treatment sought by plaintiff that he was denied as a result of the allegedly forged medical records[,]" *see* June 2020 Order at 9, the amended complaint does not identify any specific treatment that plaintiff sought and was denied following the alleged creation of forged medical records, or explain how the denial of any treatment related to the allegedly forged medical records.

Accordingly, and for the reasons set forth in the June 2020 Order, plaintiff's medical indifference claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that this action alleging federal claims under Section 1983 is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  The Clerk is directed to terminate the defendants and close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated:  August 12, 2020
        Albany, NY

Mae A. D'Agostino
U.S. District Judge

11